566 P.2d 285

**STATE of Arizona, Appellee,**

v.

**John David COBB, Appellant.**

**Nos. 3551 and 3552.**

Supreme Court of Arizona, En Banc.

June 1, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Shirley H. Frondorf, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

Appellant John David Cobb was convicted by a jury of armed robbery, burglary first degree while armed with a gun or deadly weapon, and wearing a mask in the commission of a crime. Appellant was, at the time of these convictions, on probation for two prior convictions of armed robbery in 1974. Based solely on the current convictions, the trial court, pursuant to 17 A.R.S. Rules of Criminal Procedure, rule 27.7(e), revoked appellant's probation status without a hearing. On the armed robbery and burglary, appellant was sentenced to concurrent terms of not less than five years nor more than life, and on the "mask" offense, a concurrent term of not less than one year nor more than five. Those three sentences were to be served consecutively, however, to the sentences given on the two prior armed robberies. For those, appellant was sentenced to two concurrent terms of not less than five years nor more than life.

We have jurisdiction of this appeal pursuant to A.R.S. §§ 13–1711 and 12–120.-21(A)(1).

In the early morning hours of January 16, 1976, two black men gained entrance to the Phoenix home of an elderly couple, the Carlsons, by a ruse. One of the men was of a large build, described by Mrs. Carlson as "6'1", 240 pounds." He wore a cap or hat pulled down over his face, a dark jacket, and was carrying a shotgun, which he used to frighten and rob the victims. Items taken included a rental television, a stereo with speakers and a jewelry box containing various pieces of costume jewelry.

The police were notified immediately after the intruders left. One of the first officers at the scene was David Ford. Familiar with appellant's prior armed robbery record, and given the victim's description, which matched the appellant's unusual physique, Officer Ford proceeded to appellant's home, which was very near the home of the victims. He found appellant out on the front porch of his home and went up to appellant to talk with him, since he had done so on prior occasions when he was seeking information on crimes committed in this particular area of the city. They talked for awhile and Officer Ford asked appellant "if he knew who pulled the armed robbery down the street." Appellant gave the officer a few vague leads regarding some other neighbors and people who had run between his house and the house next door.

At this same time, it appears from the record, that other policemen had arrived on the scene and were also questioning the victims' and appellant's neighbors to discover if anyone had seen or heard anything concerning the crime.

Officer Ford testified at several different hearings in this matter that he was on and off appellant's property several times, talking to him about the robbery and leads

given him by appellant. At no time did appellant appear uncooperative or ask the officer to leave the premises.

As Officer Ford was leaving appellant's front porch on one of these occasions, using his flashlight he saw a brooch lying in appellant's driveway. He picked it up, showed it to another officer and told that officer he was going to return to the victims' home to see if they could identify it. In addition, two other pieces of costume jewelry were found in the roadway and gutters in front of appellant's home. In response to defense counsel's question, "from what position did you observe the brooch?", Officer Ford answered, "I almost stepped on it."

These items were, indeed, shown to and identified by Mrs. Carlson as her jewelry which had been in the stolen jewelry box.

While the police had been investigating in the neighborhood, Mrs. Carlson found a button in her home which she did not recognize as coming from any of her own or her husband's clothing and which was not there before the robbery. This, too, was turned over to the police. Another officer, William Strauss, in the course of the investigation, asked appellant's consent to search his house. Appellant consented only to Sgt. Strauss standing in the doorway and peering into the living room. Strauss observed a dark jacket, walked into the house and seized it. In front of appellant, Strauss and the officer in possession of the button compared it to the buttons on the jacket. Since they were identical, appellant was placed under arrest, advised of his rights, and transported to the police station.

Before trial, this seizure was challenged at a suppression hearing, and the motion was granted. The jacket and button, and all reference thereto, were suppressed by the trial court.

After transporting appellant, he was left alone in an interrogation room for about seven hours while the police secured a search warrant for appellant's home and executed it. During this period, appellant was never questioned by police.

The search of appellant's home produced virtually all the items stolen in the robbery, as well as the accomplice, Clifford Matthews, a juvenile, who later testified for the state against appellant. When the search was completed and the results conveyed to Detectives Donovan Stovall and Dave Lott, they entered the interrogation room, where appellant was still waiting, and began questioning him. Appellant confessed within a very short time. He later sought to have the confession suppressed based on the illegal seizure of the jacket, which led to his illegal arrest. Finding the police supplied the magistrate with a sufficient amount of information to cause the search warrant to issue, even after striking the references to the jacket and button, the trial court refused to suppress the confession.

The appellant raises the following issues on appeal:

1. Did the trial court err in failing to instruct the jury regarding the voluntariness of appellant's confession, even though the instruction was not requested by defense counsel?

2. Did the trial court err in failing to suppress the brooch found on appellant's property?

3. Did the trial court err in failing to suppress the fruits of the crime found pursuant to the search warrant?

4. Did the trial court err in failing to suppress appellant's confession?

5. Was it error to admit into evidence a certified copy of appellant's prior convictions?

6. Did the failure of the state to produce a tape made of appellant's interrogation deny appellant due process?

7. Must the order revoking appellant's probation be reversed?

8. Did the trial court erroneously sentence appellant on the prior armed robberies after revoking his probation?

## INSTRUCTING THE JURY

■ The trial court did not instruct the jury as to the manner in which defendant's confession should be considered in their deliberations, and no request for such instruc-

tion was made by the defendant. We are aware that heretofore this has been held to be reversible error. *State v. Pulliam*, 87 Ariz. 216, 349 P.2d 781 (1960).

We are persuaded by the reasoning and holding in *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), that absent a request by defendant, failure to give such instruction is not fundamental error, requiring reversal. *State v. Pulliam, supra*, and the cases following it are specifically overruled on this point.

Justice White, delivering the opinion of the court in *Lego v. Twomey, supra*, said:

"We also reject petitioner's final contention that, even though the trial judge ruled on his coercion claim, he was entitled to have the jury decide the claim anew. To the extent this argument asserts that the judge's determination was insufficiently reliable, it is no more persuasive than petitioner's other contentions. To the extent the position assumes that a jury is better suited than a judge to determine voluntariness, it questions the basic assumptions of *Jackson v. Denno*; it also ignores that *Jackson* neither raised any question about the constitutional validity of the so-called orthodox rule for judging the admissibility of confessions nor even suggested that the Constitution requires submission of voluntariness claims to a jury as well as a judge. Finally, *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which made the Sixth Amendment right to trial by jury applicable to the States, did not purport to change the normal rule that the admissibility of evidence is a question for the court rather than the jury. Nor did that decision require that both judge and jury pass upon the admissibility of evidence when constitutional grounds are asserted for excluding it. We are not disposed to impose as a constitutional requirement a procedure we have found wanting merely to afford petitioner a second form for litigating his claim." 404 U.S. 477, 489–90, 92 S.Ct. 619, 627.

In the future, due process will be adequately served in Arizona if the trial judge alone determines, before trial, the voluntariness of any admissions or confessions of an accused. However, if the defendant requests the voluntariness question be presented to and decided by the jury as well, the trial court must then give the appropriate instruction.

## FAILURE TO SUPPRESS BROOCH

Appellant argues that the finding and seizure of the brooch was the result of a "general exploratory search" in violation of *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). He argues further that a driveway is within the curtilage of the home and therefore a place protected against unreasonable searches.

■ There is no search within the meaning of the Fourth Amendment where the objects seized are within the plain view of a police officer who has the right to be in the position to view the objects. *State v. Childs*, 110 Ariz. 389, 519 P.2d 854 (1974). Since there is no real search, it cannot be unreasonable or unconstitutional to seize the item in plain view. *State v. Childs, supra*. See *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), and *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

■ It is contended, however, that since the officer had to use a flashlight to see the brooch, there could be no "plain view." We have previously held that when the seized items are in plain view, the use of a flashlight by police to view them does not make the seizure a result of an unreasonable search. *State v. Brierly*, 109 Ariz. 310, 509 P.2d 203 (1973). Other jurisdictions concur. *State v. Hanawahine*, 50 Haw. 461, 443 P.2d 149 (1968); *Daygee v. State*, Alaska, 514 P.2d 1159 (1973). *See also United States v. Lee*, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927). To say that what would have been clearly visible to the police, and, therefore, properly seizable, within a few short hours when daylight arrived, was not properly seized because it was nighttime and a

policeman used his flashlight, stretches the legal imagination too far.

■ As for the place where the brooch was found being a protected area, we refer appellant to two recent cases, *United State v. Magana*, 512 F.2d 1169 (9th Cir. 1975), *cert. denied*, 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975), and *State v. Dugan*, 113 Ariz. 354, 555 P.2d 108 (1976).

"A driveway is only a semiprivate area. The expectation of privacy which a possessor of land may reasonably have while carrying on activities on his driveway will generally depend upon the nature of the activities and the degree of visibility from the street. . . . The test . . . should be that of reasonableness, both of the possessor's expectations of privacy and of the officers' reasons for being on that driveway." *United States v. Magana, supra*, at 1171.

In *Dugan* this court said,

". . . [A] person does not have a reasonable expectation of privacy as to a non-intrusive viewing of items in his driveway." *State v. Dugan*, 555 P.2d at 110, n. 1.

The policeman in this case was on appellant's property with appellant's consent and, therefore, properly. He had the right to be in the position to view the brooch, and the fact that he aided his view with a flashlight is inconsequential. We hold the seizure of the brooch was legal and therefore the trial court did not err in failing to suppress it.

### FAILURE TO SUPPRESS ITEMS FOUND PURSUANT TO SEARCH WARRANT

Appellant contends that the affidavit in support of the search warrant for his home was defective for two reasons, and that therefore the subsequent search was illegal and all items found should have been suppressed. Although appellant failed to include the affidavit he questions in the record on appeal, there is sufficient testimony at the suppression hearing for us to consider his contentions.

■ The first reason given by appellant for the invalidity of the affidavit is that the information it contained was insufficient to establish probable cause for a search. After excising references to the jacket and button, which she suppressed, the trial judge found there was still sufficient information to supply probable cause for a search of appellant's home. We agree. Officer Ford, who signed the affidavit, included in it the description given him by the victim, that the appellant matched that description, that certain jewelry was found on and around appellant's property, and that that jewelry had been identified by the victim. That information alone was sufficient probable cause to issue a search warrant.

■ Secondly, with regard to the affidavit, appellant argues that Officer Ford made misstatements of fact and included unsupported conclusions therein, which make the affidavit invalid. We do not agree. We carefully reviewed the alleged "misstatements" and "conclusions" and find them to be minor errors which could not possibly affect the validity of the affidavit. We will not invalidate a search warrant by a hypertechnical interpretation of the supporting affidavit. *In re One 1970 Ford Van I.D. No. 14GHJ55174, L.No. CB 4030*, 111 Ariz. 522, 533 P.2d 1157 (1975).

The trial court did not err in failing to suppress the fruits of the crime found pursuant to the execution of the search warrant.

### FAILURE TO SUPPRESS THE CONFESSION

■ Appellant contends his confession should have been suppressed for two reasons: (1) it was the fruit of an illegal search and arrest, *i. e.*, the improper seizure of the jacket, and (2) it was involuntarily made.

We have previously determined that the search warrant issued legally, even absent references to the jacket and button. Appellant was never questioned by police until after the search warrant was executed and produced the fruits of the crime. Appellant

was confronted with those results and the incriminating statement by his accomplice which he was allowed, by police, to overhear. There is no question that the confession was not brought about by the use of the illegally seized jacket and subsequent arrest, but that it happened because of the intervening incidents of a legal search and accomplice's confession. These were

". . . means sufficiently distinguishable to be purged of the primary taint. . . ."

*Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). *Accord, State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (1976).

The confession was, therefore, not the "fruit of the poisonous tree" and the trial court did not err in failing to suppress it for that reason.

■ We also disagree that the trial court clearly and manifestly erred in finding the confession was freely, voluntarily given. Without that showing, we will not disturb the trial court's determination. *State v. Edwards*, 111 Ariz. 357, 529 P.2d 1174 (1974).

■ Appellant's argument is that he was held in an interrogation room for seven hours in the middle of the night, that he was tired and sleepy and that he was lied to by the detectives who finally did interrogate him. They advised him, falsely, that his fingerprints were found in the victims' home. Appellant admitted at the voluntariness hearing he was not threatened, promised anything or induced to confess.

Looking to the totality of circumstances, as we must, *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977), we do not find that appellant's will was "overborne and his capacity for decision diminished." *State v. Edwards, supra.* He was a twenty-year-old high school graduate, with previous experience in the receiving end of criminal investigation. He was alert enough to manufacture two stories with regard to his participation in the crime before finally making his confession. *See State v. Clark*, 110 Ariz. 242, 517 P.2d 1238 (1974).

■ With regard to the police lie to appellant, that is just one circumstance to consider under the "totality of circumstances" test, and that factor alone cannot make an otherwise voluntary confession involuntary. *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

. The trial court did not err in failing to suppress the appellant's confession.

### CERTIFIED COPY OF APPELLANT'S PRIOR CONVICTIONS

■ A witness' credibility may be impeached by a prior felony conviction. *State v. Domme*, 111 Ariz. 464, 532 P.2d 526 (1975). The proper procedure for the cross-examiner is set out in *State v. Sorrell*, 85 Ariz. 173, 333 P.2d 1081 (1959):

". . . [T]he state may inquire . . if he was previously convicted of a felony. If the answer is in the affirmative he may be asked the number of such convictions, the names and nature of the crimes, and the places where they were committed . . . . If any answer . . . is incorrect, or if he claims he does not remember, or if he denies such conviction or equivocates in his response . . . the facts of his conviction or convictions may be shown by the record thereof." 85 Ariz. at 177–78, 333 P.2d at 1083–84.

■ In this case, appellant took the witness stand and on cross-examination was asked about his prior felony convictions. He readily admitted convictions for two counts of armed robbery. When asked, however, the date of such convictions, appellant replied "1974." Over defense objections, the state was allowed to introduce into evidence a certified copy of appellant's record which apparently showed the judgment of guilt for the 1974 robberies, the date of which was June, 1975. The confusion was later cleared up by the prosecutor and appellant, before the jury, by question and answer, but the trial court still admitted the certified copy into evidence. This was error. The error, however, certainly does not rise to the level of constitutional

magnitude. Even if it did, we could easily say that in view of the overwhelming evidence against appellant in this matter, the error did not contribute to the verdict and was harmless beyond a reasonable doubt. *State v. Jackson*, 109 Ariz. 559, 514 P.2d 480 (1973); *State v. Urbauer*, 109 Ariz. 584, 514 P.2d 717 (1973), *cert. denied*, 415 U.S. 950, 94 S.Ct. 1474, 39 L.Ed.2d 566 (1974).

## FAILURE TO PRODUCE INTERROGATION TAPE

■ Appellant alleges that the failure of the state to produce the recording of his interrogation session with Detectives Lott and Stovall denied him due process of law, relying on the mandates of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

".  .  . [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1196–97.

More recently the United States Supreme Court has expounded:

".  .  . [I]f the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should  .  .  . arise even if no request is made." *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976).

At the voluntariness hearing Detective Lott testified that he thought a tape recording of the interrogation was made, but was not certain. He did not know where the tape was, if indeed made. Detective Lott also testified, at both the hearing and trial, that appellant first denied any involvement at all in the crimes, before confessing.

The other officer involved in taking the confession, Detective Stovall, also testified at both the voluntariness hearing and trial. It was his opinion, at the hearing, that no tape was ever made of the interrogation session, but, again, he was not certain. Stovall also said at trial that it was possible that appellant may have initially denied involvement in the crimes. Appellant testified at the hearing and trial that he did initially deny any involvement; he was never asked if the session was recorded.

Other than these issues, the police officers' and appellant's versions of the interrogation session were identical. Appellant argues, nonetheless, that he was precluded from contesting the credibility of both officers at the voluntariness hearing and trial, and that the tape recording would have provided a more accurate presentation of the circumstances which surrounded the giving of the confession.

There being little or no difference in the presentation of the circumstances surrounding the giving of the confession in the testimony of the three participants, we do not see how the tape, if it existed, could possibly have been material to appellant's guilt, innocence or punishment.

Nor was appellant precluded from effectively contesting the credibility of the detectives. Their contradictory testimony regarding the existence of a tape was apparent to the trial judge at the voluntariness hearing, as was the conflict regarding appellant's initial statements. This second credibility gap was also before the jury at trial through cross-examination of the detectives by defense counsel. *See State v. Maloney*, 105 Ariz. 348, 464 P.2d 793 (1970), *cert. denied*, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970).

The failure of the state to produce a possibly nonexistent tape, under these circumstances, did not deprive appellant of due process of law.

## REVOCATION OF PROBATION

■ Appellant was sentenced on June 2, 1976. The record shows clearly that the trial court's sole basis for revoking appellant's probation on the previous convictions of robbery was the convictions in the instant matter. 17 A.R.S. Rules of Criminal Procedure, rule 27.7(e) permits a revocation without a hearing when the probationer is

**492**

found guilty, pursuant to rule 26.1(c), of a subsequent crime.

There was no error here, and since we are affirming appellant's conviction, we also affirm the revocation of probation pursuant to rule 27.7(e).

### ERRONEOUS SENTENCE AFTER REVOCATION

 Appellant argues, lastly, the trial court erroneously sentenced him on the two prior convictions for armed robbery, after his probation was revoked. He contends that the appropriate sentencing statute was A.R.S. § 13–643 as it read before the amendment of Laws, 1974, Chap. 144, § 3:

> "(B) Robbery committed by a person armed with a gun or deadly weapon is punishable by imprisonment in the state prison, for the first offense, for not less than five years . . . ."

We agree that that is the appropriate sentencing statute, since the date of the commission of the crimes was August 3, 1974, and the newer version of A.R.S. § 13–643 (as amended in Laws, 1974, Chap. 144, § 3) was not effective until August 9, 1974. We disagree, however, that the trial court believed it was supposed to, or did, sentence appellant under the newer version of A.R.S. § 13–643. There is no indication in the record that the trial court acted under any misapprehension regarding appellant's sentence.

The sentence, on both counts of armed robbery, was not less than five years nor more than life, a perfectly legitimate sentence under the version of A.R.S. § 13–643 quoted above. That statute provides for a minimum sentence only; no maximum is set. A.R.S. § 13–1644 says,

> "When a person is subject to punishment for a crime by imprisonment in the state prison for a term not less than any specified number of years and no limit to the duration of the imprisonment is declared, the court authorized to pronounce judgment upon such person may sentence him to imprisonment during his natural life, or for any number of years not less than prescribed."

In light thereof, the sentence given appellant was wholly within the statutory limits of A.R.S. § 13–643 which was in effect on August 3, 1974.

Judgment of convictions and sentences affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.