586 P.2d 655

**STATE of Arizona, Appellee,**

v.

**Michael TOTHILL, Appellant.**

**No. 1 CA–CR 3101.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 31, 1978.

John A. LaSota, Jr., Atty. Gen., by Georgia B. Ellexson, Asst. Atty. Gen., Phoenix, for appellee.

Brice E. Buehler, Phoenix, for appellant.

## OPINION

JACOBSON, Presiding Judge.

The question presented on this appeal is whether the trial court erred in denying a motion to suppress defendant Michael Tothill's confession. We find substantial evidence to support the ruling of the trial court and therefore affirm.

On the morning of December 24, 1976, Jessie May Bethune was found dead in her mobile home by a neighbor. The cause of death was multiple stab wounds.

In the course of their investigation, the police interviewed the defendant at a nearby trailer where he lived with his parents. During this initial conversation, the defendant indicated that on the night of the murder, he had walked to a tavern and had a couple of beers. He stated that he then walked to the house of a friend named Vito, then he and Vito walked to the home of another acquaintance named Jay, and that he thereafter returned home. The defendant told police that he had not driven a car that night.

Police spoke with Vito and Jay, and there emerged discrepancies between their accounts of the defendant's activities on the night of the murder and defendant's story. According to the testimony of Jay (Jay Murillo), the defendant arrived at his house between 12:00 o'clock and 1:00 a.m. on the night of the murder, appeared to be intoxicated, and said he was looking for Vito. Jay Murillo further testified that when the defendant left, he was driving a late model Pontiac Catalina with a blue or green body and a white top. The victim, Mrs. Bethune, owned a Pontiac with a bluish green body and a white top.

Detectives returned to defendant's mobile home on December 27, 1976, and asked him if he would accompany them to the police station. Defendant consented. On the way to the station, defendant was informed of Jay Murillo's story. He admitted that he had been driving a car the night of the murder but maintained that it was his mother's Ford. The detectives then asked why he had told them earlier that he had been walking, and he replied that he was not supposed to drive his mother's car, and since the earlier interview took place in the presence of his parents, he had not wanted to admit at that time to driving the car.

Upon arriving at the police station, defendant was taken to an interview room, advised that he might be a suspect in a murder, and read his *Miranda* rights off of a card. The text of the card is as follows:

"You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to the presence of an attorney to assist you prior to questioning and to be with you during questioning if you so desire. If you cannot afford an attorney, you have the right to have an attorney appointed for you prior to questioning. Do you understand these rights?"

To the question at the end of the text, the defendant responded affirmatively. He was then asked if he would voluntarily answer the detective's questions, and he indicated that he would.

Shortly thereafter, the defendant admitted taking the victim's car, but denied killing her, saying he did not know he could get in trouble for just taking her car. The interrogation proceeded, and the defendant eventually confessed fully to killing Mrs. Bethune.

The defendant argues that the trial court committed reversible error in denying his motion to suppress this confession. The contention is that the defendant, as a borderline mental deficient, was incapable of understanding his *Miranda* rights from a single recitation of them. Because of his mental deficiency, it is argued, he could not knowingly and intelligently waive these rights, and his confession should therefore have been suppressed.

■ For a statement to be admissible, a defendant must knowingly and intelligently waive his constitutional rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Ramirez,* 116 Ariz. 259, 569 P.2d 201 (1977). The totality of the circumstances surrounding the waiver must be examined to determine whether the state established admissibility. *State v. Humphrey,* 23 Ariz.App. 204, 531 P.2d 1142 (1975).

It is undisputed that defendant Tothill is mildly mentally retarded with an I.Q. determined to be 72.

At the suppression hearing, John Oberg, a lawyer who represented defendant in a prior felony matter, testified that in December of 1976, in connection with a proposed plea agreement, he spent approximately one hour attempting to explain to the defendant the process of a trial, and the constitutional rights he would give up by entering a plea of guilty. Mr. Oberg was of the opinion that the defendant did not understand the rights involved in entering a guilty plea, and that his understanding of his *Miranda* rights would be no greater.

Three psychiatrists and one psychologist, all of whom examined the defendant, testified at the suppression hearing. Dr. Otto Bendheim expressed the opinion that if *Miranda* rights were read to the defendant without explanation while he was in custody, he would not understand them. Dr. Michael Cleary was of the opinion that in that situation, the defendant might grasp the right to remain silent, but would not understand the rest of the rights. Dr. Howard Gray's opinion conformed in that respect to Dr. Cleary's. The psychologist, Dr. David Yandell, testified that the defendant possibly understood the idea of remaining silent, but the doctor was "less impressed by his ability to understand the other concepts . . .." The defendant's mother also testified that he would not have understood his rights.

The defendant submits that in light of all this evidence, denial of the motion to suppress was error. We cannot agree. The totality of the circumstances presents a more complex picture than the above testimony indicates.

■ We note at the outset that low intelligence, in itself, will not invalidate an otherwise knowing and intelligent waiver. *State v. Ramirez, supra; State v. Drury,* 110 Ariz. 447, 520 P.2d 495 (1974). While a suspect's capacity and comprehension may be so low that in a given case it can be said as a matter of law that he cannot make a knowing and intelligent waiver of his constitutional rights, we do not believe the trial court was required to reach that conclusion here.

The defendant, after being read his rights, indicated that he understood them. The detective who read the defendant his

rights testified that there was nothing to indicate that the defendant did not understand them. There was no evidence of coercion of any kind.

It is relevant that this was not the defendant's first experience with the criminal justice system. *See State v. Cobb,* 115 Ariz. 484, 566 P.2d 285 (1977). The trial court could also consider the defendant's ability to fabricate and relate intelligent stories to account for his activities on the night of the murder. *See State v. Cobb, supra; State v. Clark,* 110 Ariz. 242, 517 P.2d 1238 (1974). He originally told police he was out walking the night of the murder. When confronted with contrary evidence, he admitted driving a car that night, claimed it was his mother's car, and conceived a plausible explanation for his earlier tale. Confronted again, he admitted driving the victim's car, but denied the killing.

In light of the above, we cannot say as a matter of law that defendant lacked the mental capacity to knowingly and intelligently waive his *Miranda* rights. There is substantial evidence to support the trial court's denial of the motion to suppress.

The judgment of conviction and sentence is affirmed.

OGG and SCHROEDER, JJ., concur.