330 P.3d 981

**STATE of Arizona, Appellee,**

v.

**Leland Joseph JACOT, Appellant.**

**No. 1 CA–CR 13–0638.**

Court of Appeals of Arizona, Division 1.

July 17, 2014.

David A. Simpson, Phoenix, Counsel for Appellee.

Brad Bransky, Flagstaff, Counsel for Appellant.

Judge JON W. THOMPSON delivered the opinion of the Court, in which Presiding Judge RANDALL M. HOWE and Judge MICHAEL J. BROWN joined.

## OPINION

THOMPSON, Judge.

¶ 1 Leland Joseph Jacot (defendant) appeals from his convictions and sentences for one count of misconduct involving weapons as a prohibited possessor, a class 4 felony, and one count of possession of drug paraphernalia, a class 6 felony. For the following reasons, we affirm defendant's convictions and sentences.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 In 2011 and 2012, there were thirty or more burglaries, primarily of residential structures, in the Blue Ridge area of Northern Arizona. In August 2012, the Coconino County Sheriff's Office executed a search warrant on the Blue Ridge area home of a suspected burglar, Eddie Sedillo. Deputies found a cache of stolen goods in Sedillo's home, but did not find Sedillo. Suspecting Sedillo was on the run, the deputies began looking for him at the nearby homes of his acquaintances. They first went to the home of M.J., defendant's mother. M.J. allowed the officers to search her property. While at M.J.'s house, deputies spoke with defendant's brother, who informed them that defendant's home had been vacant for about three weeks because his probation had been revoked, and that he had "either locked [defendant's house] up or was making sure it was locked up." Deputies decided to check defendant's home for Sedillo.

¶ 3 Defendant's home, which was located in a rural subdivision, was surrounded by a see-through wire fence.[1] There was an unlocked, see-through, four-foot high chain link gate with a latch at the entrance of defendant's driveway. The front of the house was obscured by trees, and there was a distance of roughly forty yards (120 feet) from the gate to the front of the house. The driveway was the only approach to the front door. The deputies did not observe any no-trespassing signs. They unlatched the gate and walked up the middle of the driveway. About ten to fifteen feet away from the gate (approximately 105–110 feet from the front of the house), the deputies could see defendant's front door. It was wide open. Concerned that there was a crime in progress, the deputies set up a perimeter, called for backup, and shouted for anyone inside to surrender. There was no answer, and the deputies sent in a K-9 dog. The police dog did not indicate that anyone was present in the home.

¶ 4 Sheriff's deputies entered the home and conducted a walk-through. No one was

1. Commander Rex Gilliland testified that the fence was typical of the wire fences in rural     areas that are designed to keep pets and livestock in and wild animals out.

home. They found a rifle propped against the wall in a bedroom, but did not seize it until they returned with a search warrant a week later. At that time, defendant was home. Deputies arrested him, seized the rifle, several boxes of ammunition, and a glass pipe containing methamphetamine residue. Defendant admitted that the meth pipe was his, that he had used drugs, and that he knew the rifle was in his house.

¶ 5 The state charged defendant with one count of misconduct involving weapons as a prohibited possessor, a class 4 felony, one count of possession of drug paraphernalia, a class 6 felony, and one count of possession or use of dangerous drugs, a class 4 felony. The state later moved to dismiss the drug possession charge, and the trial court granted the motion.

¶ 6 Defendant filed a motion to suppress all of the evidence from his home as the fruit of an illegal search. After a hearing, the trial court denied the motion. The court found that the deputies did not intrude into protected curtilage of defendant's property, and that once the deputies observed that the front door was open, they could enter the house pursuant to the community caretaking exception.

¶ 7 After a jury trial, defendant was convicted of misconduct involving weapons as a prohibited possessor (count one) and possession of drug paraphernalia (count two). Defendant admitted to having one prior felony conviction for sentence enhancing purposes. The trial court sentenced defendant to concurrent sentences of 4.5 years in prison for count one and 1.75 years in prison for count two, and gave him credit for forty-three days of presentence incarceration. Defendant timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12–120.21(A)(1) (2003), 13–4031 (2010), and 13–4033(A) (2010).

## DISCUSSION

¶ 8 Defendant argues that the trial court abused its discretion in denying his motion to suppress. He argues that the deputies violated his Fourth Amendment rights 1) by entering the curtilage of his house without a warrant, and 2) by entering his house without a warrant because the entry was not justified by the community caretaking doctrine.

### A. Standard of Review

¶ 9 We review the trial court's denial of a motion to suppress evidence for an abuse of discretion. *State v. Dean*, 206 Ariz. 158, 161, 76 P.3d 429, 432 (2003). We defer to the trial court's factual findings, but review the court's ultimate legal determination, including the extent of a home's curtilage, de novo. *Id.; State v. Olm*, 223 Ariz. 429, 432, ¶¶ 7, 8, 224 P.3d 245, 248 (App.2010). We look "only to the evidence presented at the suppression hearing and view it in the light most favorable to sustaining the court's ruling." *State v. Brown*, 233 Ariz. 153, 156, ¶ 4, 310 P.3d 29, 32 (App.2013).

### B. Ten to Fifteen Feet Down Defendant's Driveway Was Not Protected Curtilage

¶ 10 The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The protection of a person's home extends to the home's "curtilage," or "the area immediately surrounding a dwelling house." *United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). A warrantless search is presumptively invalid; the state has the burden of proving the constitutionality of such a search. *Olm*, 223 Ariz. at 431, ¶ 5, 224 P.3d at 247.

¶ 11 In *Dunn*, the United States Supreme Court recognized that "the central component of [the inquiry into the extent of a home's curtilage is] whether the area harbors the 'intimate activity associated with the sanctity of a man's home and the privacies of life.'" 480 U.S. at 300, 107 S.Ct. 1134 (quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). The *Dunn* Court set forth four factors for the court to consider in resolving a curtilage question:

[W]e believe that curtilage questions should be resolved with particular refer-

ence to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

480 U.S. at 301, 107 S.Ct. 1134. The factors are not a laundry list, nor are they to be construed as a formula which will yield a correct answer to extent-of-curtilage questions in every situation. *Id.*

¶ 12 In *State v. Cobb,* 115 Ariz. 484, 566 P.2d 285 (1977), the Arizona Supreme Court held that a defendant's driveway was not within the curtilage of his home:

A driveway is only a semiprivate area. The expectation of privacy which a possessor of land may reasonably have while carrying on activities on his driveway will generally depend upon the nature of the activities and the degree of visibility from the street.... The test ... should be that of reasonableness, both of the possessor's expectations of privacy and of the officers' reasons for being on that driveway.

115 Ariz. at 489, 566 P.2d at 290 (quoting *United States v. Magana,* 512 F.2d 1169, 1171 (9th Cir.1975)). *See also State v. Dugan,* 113 Ariz. 354, 356, n. 1, 555 P.2d 108, 110, n. 1 (1976) ("Cases have recognized that in most instances a person does not have a reasonable expectation of privacy as to a nonintrusive viewing of items in his driveway.") (citations omitted). Furthermore, "a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" *Florida v. Jardines,* —— U.S. ——, 133 S.Ct. 1409, 1416, 185 L.Ed.2d 495 (2013) (quoting *Kentucky v. King,* 563 U.S. ——, ——, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011)).

¶ 13 Here, the deputies had made only a slight intrusion onto the driveway, about ten to fifteen feet from the road, when they noticed the wide-open front door of defendant's house. We do not believe that this stretch of the driveway was within the curtilage of the house solely because there was a gate across the driveway, especially given the lack of no-trespassing signs. However, even if that ten to fifteen foot stretch of driveway was within the curtilage of the house, it was reasonable for the deputies to unlatch the gate, keep to the driveway, and approach the front door as any member of the public would do. *See Jardines,* —— U.S. ——, 133 S.Ct. at 1416. *See also Nieminski v. State,* 60 So.3d 521, 526 (Fla.Dist.Ct.App. 2011) (law enforcement officer may open a closed, but unlocked driveway gate on rural acreage completely surrounded by a chain link fence to walk to the front door of house, in the absence of no-trespassing sign or similar warning for persons to stay out).

## C. A Search Pursuant to the Community Caretaking Doctrine Was Permissible

¶ 14 Defendant next argues that the trial court erred in finding that the warrantless entry into his home was permissible under law enforcement's "community caretaking function." The trial court found that once the deputies observed that the front door was open, they could enter the house pursuant to the community caretaking exception, stating, *inter alia,* "I believe the officers, in fact, had a right, and actually an obligation, when, once they saw that the door was open, to engage in the community caretaking function...."

¶ 15 The community caretaking doctrine allows evidence discovered without a warrant to be admissible when officers had engaged in "community caretaking functions" designed to promote public safety. *State v. Organ,* 225 Ariz. 43, 46, ¶ 12, 234 P.3d 611, 614 (App.2010) (citing *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)). A warrantless search pursuant to the community caretaking exception is permissible when the search is "'suitably circumscribed to serve the exigency which prompted it.'" *In re Tiffany O.,* 217 Ariz. 370, 377, ¶ 29, 174 P.3d 282, 290 (App.2007) (quoting *People v. Ray,* 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928, 937 (1999)). "The appropriate standard under the community caretaking exception is one of reasonableness: Given the known facts, would a prudent and reasonable officer have perceived a need to act in the proper discharge

of his or her community caretaking functions?" *Organ,* 225 Ariz. at 47, ¶ 15, 234 P.3d at 615 (quoting *Ray,* 88 Cal.Rptr.2d 1, 981 P.2d at 937).

¶ 16 In this case, deputies were aware that there had been thirty or more burglaries in the area. The deputies had been told that defendant's house was supposed to be locked, but instead found that the front door was wide open.[2] Consistent with the deputies' duty to protect defendant's property, the officers went in and made a cursory examination of the house, during which they observed the rifle in plain view in a bedroom. The search that occurred here was thus "suitably circumscribed" to serve the situation presented. *See Ray,* 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928, 939 ("When doors are open, we will hope that [officers] will take steps to find out what is going on.... That is what law-abiding, tax-paying citizens desire and expect of their local constabulatory.") (citation omitted).

¶ 17 Defendant argues that the search was not reasonable because no one responded to the officers' vocal command for anyone inside the house to come out, because the police dog did not alert to anyone's presence, and because the contents of the home were not in disarray. The fact that no one surrendered when asked does not make the entry into the house with a wide-open front door in an area inundated with residential burglaries unreasonable; nor does the police dog's failure to alert.[3] Further, the officers could not have known whether the house was in disarray until after they entered the home. The wide-

open door, supposed to have been locked and secured by defendant's brother, indicated a need to make inquiry by entering the home. Defendant further suggests that the officers should have contacted his brother, contacted him in jail, or obtained a warrant before entering the house. We find that a reasonable law enforcement officer would not have delayed to investigate in the situation present here, where prompt inquiry might aid apprehension of a burglar and property recovery.

¶ 18 Although defendant has not characterized the entry into his home as pretextual, we are cognizant that the cases reflect concern about pretext. *See Ray,* 88 Cal.Rptr.2d 1, 981 P.2d at 937–38 ("courts must be especially vigilant in guarding against subterfuge, that is, a false reliance upon the ... property protection rationale when the real purpose was to seek out evidence of crime. The entry cannot be made on the pretext to search for contraband or illegal activity rather than to look for ... suspects and to preserve an occupant's property. In this regard, the trial courts play a vital gatekeeper role, judging not only the credibility of the officers' testimony but of their motivations. Any intention of engaging in crime-solving activities will defeat the community caretaking exception even in cases of mixed motives.") (citations omitted).

¶ 19 In this case, at the beginning of the Sheriff's Office's investigation into the Blue Ridge burglaries, defendant was considered a "possible" second suspect in the burglaries.[4] Before the warrantless search of defendant's

**2.** Commander Gilliland testified that when he observed the open front door he assumed there was a burglary or other crime in progress, given that the home was supposed to have been secured. Courts have allowed warrantless searches of houses where there was an indication that a burglary was in progress or had recently occurred. *See State v. Lemieux,* 726 N.W.2d 783, 790 (Minn.2007) ("That the officers later learned [defendant] had entered his own abode is of no moment: 'what matters is their reasonable belief' that a burglary was in progress or had recently occurred at the time of the entry.") (quoting *In re Sealed Case,* 153 F.3d 759, 765 (D.C.Cir.1998)). Commander Gilliland testified as follows: "I didn't know at that point if it was Mr. Sedillo, or possibly ... someone else that was unlawfully in that house, potentially victimizing Mr. Jacot. I also believed ... in line with

our mission statement of preservation of property, that we had a duty to secure that residence for whoever that ... owner is, to check it to make sure it was secure."

**3.** Deputy Shouse explained in his interview that the police dog was "very distracted" because there was dog urine inside the house.

**4.** Although Deputy Shouse at some point thought of defendant as a "possible suspect," for unknown reasons, Commander Gilliland testified that at the time of the search he believed that "the rest of the world was a possible suspect in [the] case," and had no reasonable suspicion or probable cause that defendant was implicated in the burglaries.

home, however, there was no evidence that he had committed burglary. Nor was there any evidence that Commander Gilliland's motive in entering the home was to adduce evidence that defendant was a burglar. The trial court accepted Gilliland's testimony as to his reason for entering the home, to protect defendant's property, and we defer to the trial court's determination.

## CONCLUSION

¶ 20 Because law enforcement officers reasonably entered defendant's driveway and home without a warrant, we find no abuse of discretion in the trial court's denial of defendant's motion to suppress the evidence which led to his convictions. We affirm defendant's convictions and sentences.