¶ 26 For the above stated reasons, defendant's conviction is affirmed.

351 P.3d 363

**STATE of Arizona, Appellee,**

v.

**Starr BENNETT, Appellant.**

**No. 1 CA–CR 14–0628.**

Court of Appeals of Arizona,
Division 1.

June 2, 2015.

Arizona Attorney General's Office By Jana Zinman, Phoenix, Counsel for Appellee.

David Goldberg, Fort Collins, CO, Counsel for Appellant.

Judge RANDALL M. HOWE delivered the opinion of the Court, in which Presiding Judge MARGARET H. DOWNIE and Judge PATRICIA K. NORRIS joined.

## OPINION

HOWE, Judge:

¶ 1 Starr Bennett appeals her convictions for production of marijuana and possession of marijuana and drug paraphernalia. She argues that the trial court abused its discretion in denying her motion to suppress evidence obtained during a warrantless search. Because the emergency aid exception to the warrant requirement justified the search here, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The police received a "911 hang up" call, and after a failed attempt to reach the caller, the 911 dispatcher sent two deputy sheriffs to a specific address near Paulden, Arizona. According to the Sheriff's Office policies and procedures, 911 hang-up calls are treated as emergencies and deputies are required to respond to the location and check for any emergency and on the well-being of the person who may have called.

¶ 3 When the deputies arrived at the address, they noticed a main structure and a smaller structure. They knocked on the

main structure's front door, but no one responded. They then walked around the side past an unlocked gate to an enclosed patio. The deputies looked inside the windows, but saw no one and heard nothing. One of the deputies stood on a pedestal and looked inside a window. Inside and to the "right of the window [that the deputy] was looking into," both deputies saw part of a marijuana plant. After attempting to open the patio door, they turned around and noticed several potted marijuana plants in the smaller structure's yard.

¶ 4 Soon after, Bennett came out of the smaller structure, and the deputies went over and talked to her. She was "[v]ery cooperative, very kind, pleasant." The deputies asked Bennett if she called 911; she said no. At that point, the deputies were satisfied that they had no emergency.

¶ 5 The deputies subsequently asked Bennett about the marijuana plants. She said that the plants were hers and that she used them for medicinal purposes, although she did not have a medical marijuana card. The deputies asked for the plants, and Bennett put them in burlap bags. Bennett subsequently let the deputies inside the smaller structure where she gave them marijuana stored in a coffee can, marijuana cigarettes, and marijuana buds. After the deputies left, the 911 dispatcher told them that someone with a cell phone accidentally placed the call. The dispatcher had learned this information eight to ten minutes after the hang-up call when the person called her back. She also learned that the calls came from the same cell phone, but had different GPS coordinates.

¶ 6 Bennett was charged with production of marijuana and possession of marijuana and drug paraphernalia. Before trial, she moved to suppress the marijuana plants and the fruits found from the search arguing that the deputies conducted the search without a warrant and that no exception to the warrant requirement applied. After conducting an

evidentiary hearing, the trial court denied her motion. The court found that the emergency aid exception applied because the deputies had reasonable grounds to believe an emergency existed, their primary intent was to make sure no one was hurt, and a reasonable basis existed to associate the emergency with the place searched.

¶ 7 After a bench trial, the court found Bennett guilty as charged. The court sentenced her to one year of unsupervised probation. Bennett timely appealed.

## DISCUSSION

¶ 8 Bennett argues that the trial court abused its discretion by denying her motion to suppress because the emergency aid exception to the warrant requirement of the Fourth Amendment to the United States Constitution did not justify the search.[1] "We review the trial court's denial of a motion to suppress evidence for an abuse of discretion." State v. Jacot, 235 Ariz. 224, 227 ¶ 9, 330 P.3d 981, 984 (App.2014). We defer to the court's factual findings, but review its legal conclusions de novo. State v. Olm, 223 Ariz. 429, 432 ¶ 7, 224 P.3d 245, 248 (App. 2010). "In our review, we look only to the evidence presented at the suppression hearing and view it in the light most favorable to sustaining the court's ruling." State v. Brown, 233 Ariz. 153, 156 ¶ 4, 310 P.3d 29, 32 (App.2013).

¶ 9 The trial court did not abuse its discretion in denying suppression of the marijuana plants and fruits found from the search. The Fourth Amendment prohibits unreasonable searches and seizures of a person's dwelling without a search warrant. But the emergency aid exception to the warrant requirement permits a warrantless entry into a dwelling when police officers reasonably believe that someone within is in need of immediate aid or assistance. State v. Fisher, 141 Ariz. 227, 237, 686 P.2d 750, 760

---

1. Bennett also argues that the Arizona Constitution provides greater protection to homeowners than the Fourth Amendment. Bennett does not cite to any authority, however, that Arizona courts apply the emergency aid exception under the Arizona Constitution any differently than under the United States Constitution. In fact, the emergency aid exception applies under both the Arizona and United States Constitutions. See State v. Jones, 188 Ariz. 388, 395, 937 P.2d 310, 317 (1997).

(1984). The exception applies when (1) the police have reasonable grounds to believe an emergency exists that requires their immediate assistance to protect life or property and (2) a reasonable basis exists to associate the emergency with the place to be searched.[2] *State v. Inzunza,* 234 Ariz. 78, 82 ¶ 12, 316 P.3d 1266, 1270 (App.2014). "The reasonableness of a police officer's response in a given situation is a question of fact for the trial court." *Fisher,* 141 Ariz. at 237–38, 686 P.2d at 760–61. Here, the trial court found that the two elements were met, but Bennett argues that the court erred in applying them. We disagree and find that both elements were met.

¶ 10 First, the deputies had reasonable grounds to believe an emergency was at hand that required their assistance to protect life or property. They were dispatched because of a 911 hang-up call, which the deputies treated as an emergency, to check on the well-being of persons that may have dialed 911, and to attempt to exhaust all avenues to determine whether an emergency existed. This was exactly what the deputies did. They knocked on the front door, but received no response. They scanned the premises, especially the main building, looking into windows, attempting to open the back-patio door, but neither saw nor heard anything from inside. Only after they spoke to Bennett—who was cooperative, kind, and pleasant—were they satisfied that no emergency was afoot.

¶ 11 Bennett counters that a 911 hang-up call with nothing further does not support a reasonable belief that someone is either seriously injured or in imminent threat of being injured. But the circumstances here reflect more than only a 911 hang-up call to justify the deputies' reasonable belief that an emergency existed that needed their immediate assistance. Specifically, as noted, the deputies knocked on the main structure's front door and received no answer and were unable to verify that either there had never been an emergency or the emergency had passed. These additional circumstances gave the deputies additional objective information that the emergency that had first brought them to the address had not abated.

¶ 12 Second, a reasonable basis existed to associate the emergency with the area searched. The 911 dispatcher gave the deputies an exact address, and they responded to that address to make sure no one needed help. At that address, the deputies saw the marijuana plants in the yard. *See Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) ("[T]he police may seize any evidence that is in plain view during the course of their legitimate emergency activities."). Although the 911 dispatcher knew that the call came from a cell phone with GPS coordinates, she did not relay this information to the deputies, and thus, they had no reason to suspect that they were not at the correct address. Because, under the circumstances presented here, the emergency aid exception justified the deputies' warrantless search, the search was lawful.[3]

¶ 13 Bennett counters that the dispatcher knew that the 911 hang-up call was an accident. She argues that because the collective knowledge of all police officers involved in a case can be considered in determining whether probable cause exists, then analogously, the collective knowledge of all officers involved should be considered to negate reasonable belief. But Bennett has not cited, nor have we found, any case to support

---

2. Our supreme court has also required considering whether the search was primarily motivated by intent to arrest and seize evidence. *See Jones,* 188 Ariz. at 395, 937 P.2d at 317; *Fisher,* 141 Ariz. at 237–38, 686 P.2d at 760–61. We will not consider this element, however, because the United States Supreme Court has since rejected it. *See Brigham City v. Stuart,* 547 U.S. 398, 404–05, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (holding that the Fourth Amendment exclusively concerns whether the circumstances confronting officials provided an objectively reasonable basis for the action). In any event, the outcome would be the same because the record reflects that the deputies' search here was motivated by their reasonable belief that an emergency existed.

3. Because the emergency aid exception justified the warrantless search, we need not address the State's argument that the search was proper under the community caretaker doctrine. *See State v. DeWitt,* 184 Ariz. 464, 468, 910 P.2d 9, 13 (1996) (providing that a search conducted without a warrant is constitutional when one of the specific and well-established exceptions to the warrant requirement applies).

her contention. Probable cause and reasonable belief are similar in that they are determined by the objective effect of the officers' actions. The fundamental difference, however, is the extent to which we examine the objective effect of the officers' actions. Whether probable cause exists depends on the totality of the facts and circumstances known to police officers at the time of the arrest, and therefore, Arizona courts have held that those facts may include the collective knowledge of all law enforcement agents involved in the case. *State v. Lawson,* 144 Ariz. 547, 553, 698 P.2d 1266, 1272 (1985). In contrast, whether reasonable belief justifies a warrantless entry under the emergency aid doctrine depends on the facts and circumstances known to the officers on the scene at the time. *See generally Fisher,* 141 Ariz. at 237–41, 686 P.2d at 760–64. As Arizona courts have recognized, this is because the officers are entering a premises to preserve human life, which is "paramount to the right of privacy protected by search and seizure laws and constitutional [guarantees]." *Id.* at 237, 686 P.2d at 760.

 ¶ 14 Bennett further counters that the exclusionary rule's deterrent purpose is served by suppressing the evidence. The exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Id.* at 240, 686 P.2d at 763. But because a search under the emergency aid exception is reasonable and because we do not want to deter officers from engaging in searches to protect life or property, the exclusionary rule does not apply. *Id.* Consequently, the deputies' action here fell within the emergency aid exception to the warrant requirement, and accordingly, the trial court did not abuse its discretion in denying Bennett's motion to suppress the marijuana or the fruits found from the search.

## CONCLUSION

¶ 15 For the foregoing reasons, we affirm.