NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ANTHONY JEROME WOODS, *Appellant*.

No. 1 CA-CR 20-0100
FILED 1-18-2022

Appeal from the Superior Court in Maricopa County
No. CR2014-002261-001
The Honorable Jose S. Padilla, Judge (Retired)
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

The Nolan Law Firm, P.L.L.C., Mesa
By Todd E. Nolan
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge David B. Gass and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

**¶1**         Anthony Jerome Woods appeals his conviction and sentence for transportation of marijuana for sale. Seeing no reversible error, we affirm.

### FACTUAL[1] AND PROCEDURAL HISTORY

**¶2**         Woods was driving alone in his sport utility vehicle ("SUV") on State Route ("SR") 85 near Gila Bend when two Arizona Department of Public Safety ("DPS") troopers pulled Woods over for speeding. The troopers found two bundles of marijuana in Woods' vehicle that together weighed 46 pounds.

**¶3**         Woods initially denied knowing about the marijuana and said he had lent the SUV to a friend. But when confronted, Woods said he "had an idea" about the marijuana but "did not know it was back there." A further search of Woods' SUV uncovered five cell phones and a plastic storage container holding barbecue sauce, mustard, an odor-eliminating spray, isopropyl alcohol, carbon paper, and a box of vacuum-seal bags.

**¶4**         A jury convicted Woods of transportation of marijuana for sale and found he committed the crime "for pecuniary gain." Because Woods absconded on the last day of trial, he was not sentenced until he was apprehended more than a year later. The superior court sentenced him, as a category 3 repetitive offender, to the minimum term of 14 years' imprisonment. We have jurisdiction over Woods' appeal under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

---

[1]         "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996).

**DISCUSSION**

*I.   Motions to Suppress*

¶5          Before trial, Woods moved to suppress all evidence obtained after he was pulled over. He challenged the constitutionality of both the stop and search of his vehicle.

¶6          At the suppression hearing, one trooper testified he and his partner spotted Woods' SUV approximately four car lengths ahead of them when they turned onto SR 85 in a 30-m.p.h. zone. They saw the SUV pass a semi-truck and then paced the vehicle while watching the patrol car's speedometer for about half a mile. The trooper estimated Woods was traveling 15 miles per hour over the speed limit and initiated a traffic stop "right in the area" where the speed limit on SR 85 increased from 30 m.p.h. to 65 m.p.h.

¶7          The troopers placed Woods under arrest because he had an outstanding warrant for conspiracy to transport marijuana. While awaiting a tow truck to remove the SUV, one trooper began a "vehicle inventory search" and found the hidden bundles of marijuana. The trooper then stopped the inventory process. Woods was advised of his *Miranda* rights and told about the approximately 40 pounds of marijuana found in his vehicle. The tow truck was canceled, and one of the troopers drove Woods' SUV to a secured evidence facility, where it was further searched.

¶8          Woods also testified at the suppression hearing. He stated he saw the patrol car pull onto SR 85 behind him, took care not to speed, and only passed the semi-truck once the speed limit increased to 65 m.p.h. Woods estimated the patrol car followed him for two miles in the 65-m.p.h. zone before pulling him over. He testified that after he was arrested on the outstanding warrant, he did not see either trooper search his SUV and he was not informed of the marijuana found in the SUV until he was at the police station.

¶9          After Woods testified, the State recalled the trooper, who said it would have been impossible for Woods to pass the semi-truck after the speed limit increased to 65 m.p.h. because SR 85 narrowed to one lane at that point, Woods would have had to commit a traffic violation to pass the semi-truck, and the trooper did not see Woods do so. The trooper also reiterated his previous testimony that he found the marijuana shortly after beginning his vehicle inventory search.

¶10      The superior court denied Woods' motions to suppress concluding the troopers had reasonable suspicion to stop Woods for speeding and that discovery of the marijuana was inevitable, and therefore lawful, under the circumstances.

¶11      We review Woods' challenge to the superior court's denial of his motions to suppress for an abuse of discretion, limiting our consideration to the evidence presented at the suppression hearing. *State v. Bennett*, 237 Ariz. 356, 358, ¶ 8 (App. 2015). "We defer to the court's factual findings[] but review its legal conclusions de novo." *Id.* The court's decision will be upheld if it is "legally correct for any reason." *State v. Boteo-Flores*, 230 Ariz. 551, 553, ¶ 7 (App. 2012).

¶12      The superior court found the traffic stop to be constitutional. In doing so, the court made a credibility determination between conflicting testimony, ultimately believing the trooper's testimony that Woods was speeding—and that Woods could not have passed the semi-truck after the speed limit increased to 65 m.p.h.—over Woods' testimony he was not speeding. Woods' reliance on *State v. Livingston*, 206 Ariz. 145 (App. 2003), for the proposition that a stop is unreasonable if it is premised on a traffic violation that drivers routinely commit, is both a mischaracterization of *Livingston* and contrary to authority. *See id.* at 148, ¶ 10 (finding the stop in that case unreasonable because the driver did not, in fact, violate a traffic law); *but see Whren v. United States*, 517 U.S. 806, 810, 813 (1996) (holding that a traffic stop following an officer's observation of a traffic violation is reasonable, regardless of the officer's subjective motive).

¶13      The superior court also ruled that the search of Woods' SUV was lawful because the State established by a preponderance of the evidence that the marijuana was found pursuant to a valid inventory search. *See* Ariz. R. Crim. P. 16.2(b).

¶14      "[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). Evidence discovered during an inventory search is not subject to the exclusionary rule "if two requirements are met: (1) law enforcement officials must have lawful possession or custody of the vehicle, and (2) the inventory search must have been conducted in good faith and not used as a subterfuge for a warrantless search." *State v. Organ*, 225 Ariz. 43, 48, ¶¶ 20–21 (App. 2010). While an inventory search administered under standardized procedures is presumptively reasonable,

a search "conducted solely for the purpose of discovering evidence of a crime" is not. *Id.* at ¶ 21.

**¶15** The State offered evidence at the suppression hearing that under the circumstances in this case—where a driver is arrested and does not have someone to take custody of the vehicle—the trooper followed state law and DPS policy by calling for a tow truck. *See* A.R.S. § 28-872(C)(3). The State further provided evidence that before releasing a vehicle to a towing company, DPS policy requires its troopers to "inventory" the vehicle by documenting its condition and contents—including by "open[ing] and inspect[ing] all closed, unlocked containers."

**¶16** The record supports the State's position that the trooper discovered the marijuana by following "reasonable police regulations relating to inventory procedures administered in good faith." *Bertine*, 479 U.S. at 374. Whether the trooper may have hoped to find contraband during the search, or that he happened to find the marijuana rather quickly, does not demonstrate that the inventory procedure was "used as a subterfuge for a warrantless search" or "conducted solely for the purpose of discovering evidence of a crime." *Organ*, 225 Ariz. at 48, ¶ 21. The trooper's explanation for not fully completing the documentation for an inventory search—namely, that once the marijuana was found, the matter turned from an inventory search to a probable cause search, which required different documentation—is both supported by the record and logically sound.

## II. *Drug Trafficking Evidence*

**¶17** Woods filed two motions *in limine* regarding the State's presentation of expert testimony. In one, he asked the superior court to preclude the State from calling a detective as a drug-trafficking expert. In the other, he asked the court to preclude the State from eliciting testimony from the same detective regarding the weight, size, and packaging of marijuana. Woods asserted such testimony was inadmissible profile evidence, would function as an improper opinion on Woods' mental state regarding the sale of the marijuana, and otherwise served no proper purpose.

**¶18** Resolving the motions together, the superior court ruled the detective would be allowed to testify on "his education, training, and experience in the area of dealing with drug trafficking sales and issues such as packaging and similar type of testimony," but that he could not offer any

"drug [courier] profile testimony or opinions," including "opinions that [Woods] meets any kind of a profile as a drug trafficker or courier."

**¶19** Woods initially asserts that the superior court should have granted both motions *in limine* in full. The argument fails, however, because the record supports the court's implied finding that the detective's qualification as an expert and the nature of his proposed testimony—subject to the court's ruling on profile evidence—satisfied the requirements of Arizona Rule of Evidence 702.

**¶20** Woods also argues the superior court improperly allowed the State to elicit drug-courier profile testimony, in violation of the court's pretrial ruling, from both the trooper and the detective. "We review [the superior] court's admission of evidence for an abuse of discretion, which can include errors of law." *State v. Haskie*, 242 Ariz. 582, 585, ¶ 11 (2017). Where Woods objected to the challenged testimony, we review its admission for harmless error, which "places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005). The admission of unobjected-to testimony is subject to fundamental-error review, *id.* at ¶ 19, which requires the defendant to demonstrate "that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial," *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). Error under the first or second prong requires the defendant to also show prejudice, but prejudice is inherent if the defendant establishes error under the third prong. *Id.*

**¶21** A drug-courier profile is an "informal compilation of characteristics . . . typically displayed by persons trafficking in illegal drugs." *State v. Lee*, 191 Ariz. 542, 544, ¶ 10 (1998) (internal citations and quotation marks omitted). The attributes that make up a drug-courier profile tend to be "general, often contradictory, characteristics and behaviors" that can be "innocent and commonplace." *Id.* at 544–45, ¶¶ 10, 14.

**¶22** "Drug-courier profile evidence suggests that a defendant possesses one or more behavioral characteristics typically displayed by persons trafficking in illegal drugs." *Escalante*, 245 Ariz. at 142, ¶ 22. "Describing evidence as 'profile' evidence is a shorthand way of saying that the evidence is offered to implicitly or explicitly suggest that *because* the defendant has those characteristics, a jury should conclude that the defendant must have committed the crime charged." *Haskie*, 242 Ariz. at

6

585–86, ¶ 14. Profile evidence may not be used as "substantive proof of guilt" because doing so "creates too high a risk that a defendant will be convicted not for what he did but for what others are doing." *Lee*, 191 Ariz. at 545, ¶ 12 (internal citations and quotation marks omitted). The Arizona Supreme Court has reversed convictions based on the improper use of drug-courier profile evidence where the prosecution's evidence largely consisted of general behavioral characteristics attributed to drug couriers and where proof of the defendant's guilt was weak in the absence of the profile evidence. *See id.* at 545–46, ¶¶ 13, 18–19 (defendant convicted of knowingly transporting drugs for sale based on evidence consisting of the departure time and destination of a chosen airline flight and the type of luggage carried); *Escalante*, 245 Ariz. at 139, 142–43, ¶¶ 8–9, 23–24, 26 (defendant convicted of knowingly transporting drugs for sale based on evidence consisting of the use of surveillance cameras and the time, manner, route, and destination of travel).

**¶23** On the other hand, drug-courier evidence may be admitted where it "has significance beyond the mere suggestion that because an accused's conduct is similar to that of other proven violators, he too must be guilty." *Lee*, 191 Ariz. at 546, ¶ 19. Thus, such evidence may be used "to assist a jury in understanding the modus operandi of a drug-trafficking organization" or if it is otherwise "helpful to a jury's understanding of the evidence." *Escalante*, 245 Ariz. at 142–43, ¶¶ 22, 25. That said, an "expert may not provide an opinion comparing the modus operandi of [a drug-trafficking] organization with the conduct of a defendant in a particular case" because "it is the province of the jury to determine whether a defendant's conduct fits within the modus operandi of a drug trafficking organization." *State v. Garcia-Quintana*, 234 Ariz. 267, 271, ¶ 14 (App. 2014); *see also Escalante*, 245 Ariz. at 143, ¶ 25 (observing that an expert may explain how certain items "can be used to mask the smell of illegal drugs from police dogs" but may not take the further step of opining that the defendant's possession of such masking agents, "together with other behaviors, was 'consistent with drug trafficking'").

**¶24** Here, Woods contends the trooper provided inadmissible drug-courier profile evidence where he testified that (1) people commonly try to distance themselves from their vehicles after contraband is found in the vehicle; (2) when asked whether it was "not normal to know what was in your vehicle before a long trip," Woods responded, "Yeah, that is not normal"; (3) Woods was pulled over in a drug "smuggling area"; (4) it was typical for drugs like the marijuana in this case to be hidden; and (5) vehicles used to smuggle drugs tend to be nondescript rather than flashy. Although Woods objected to three of the above instances, he did not assert

as grounds for the objection that the testimony was inadmissible profile evidence.

¶25        Woods contends the detective crossed the line into providing inadmissible profile evidence when he testified about how marijuana is trafficked from Mexico into the United States through the Gila Bend area, including how the marijuana is compressed and packaged into 20- to 25-pound bundles, and its worth. Woods also disputes the admissibility of the detective's testimony that the amount, value, and packaging of the marijuana in this case indicate it came from Mexico for the purpose of being repackaged into smaller parcels and sold for profit. The only objections Woods made to the detective's testimony on profile grounds related to evidence about the packaging of marijuana and why traffickers tend to possess multiple cell phones.

¶26        Woods has failed to show error. Testimony about how marijuana is generally transported in bulk from Mexico into Arizona—including testimony about the value, packaging, and concealment of the drugs—was proper because it was helpful to jurors' understanding of the evidence and to their determination of whether Woods was knowingly transporting the marijuana for sale. *See* Ariz. R. Evid. 702(a); *Garcia-Quintana*, 234 Ariz. at 272–73, ¶ 23 (finding no error in the admission of testimony about the routes used by drug traffickers, the methods used to avoid detection, and how marijuana is packaged and carried across the Mexican border into the United States); *State v. Gonzalez*, 229 Ariz. 550, 554, ¶ 15 (App. 2012) (holding that testimony about the general operations of a drug-trafficking organization was not inadmissible profile evidence where it "provided circumstantial evidence of [the defendant's] knowledge of the drugs in the car, a fact that went to the heart of [the defendant's] defense theory at trial"); *State v. Fornof*, 218 Ariz. 74, 79, ¶¶ 20–21 (App. 2008) (finding no error in the admission of expert testimony that the amount and value of cocaine possessed by the defendant indicated it was for sale rather than personal use); *see also Gonzalez*, 229 Ariz. at 555, ¶ 19 n.4 (holding that "*modus operandi* evidence is not limited to complex drug cases, and may be admitted in non-complex, drug-courier cases").

¶27        The trooper's testimony about people distancing themselves from contraband and about Woods' own admission it was abnormal for a person not to know what was in their vehicle, was not improper because the testimony was not offered to connect Woods to a drug-courier profile. Similarly, evidence of the weight or value of drugs in a case does not fall into the category of profile evidence because the weight or value of a drug

is not a "behavioral characteristic[] typically displayed by persons trafficking in illegal drugs." *See Escalante*, 245 Ariz. at 142, ¶ 22.

**¶28**        Although the trooper's testimony about Woods driving in a smuggling area and the use of nondescript vehicles to traffic drugs might be considered improper profile evidence in some circumstances, the testimony was permissible here. The trooper's reference to Woods being stopped in a smuggling area was admissible because it was not offered to prove that Woods was a drug smuggler but rather to explain why the troopers wanted to expeditiously remove Woods' drug-containing vehicle from the area. *Cf. Garcia-Quintana*, 234 Ariz. at 273, ¶ 25 (testimony the defendant was apprehended in a high drug-traffic area was properly admitted where offered to explain why the apprehending officer was surveilling the area). The trooper's testimony about the use of nondescript vehicles to transport drugs was not improper because it was offered not to prove that Woods was a drug trafficker but rather to rebut an insinuation by Woods that a drug trafficker would drive a flashy vehicle. *See Lee*, 191 Ariz. at 545, ¶ 11 (observing that profile evidence may be admissible as rebuttal evidence).

**¶29**        Even if the trooper's testimony, or the detective's testimony, strayed into inadmissible profile evidence in one or two instances, and assuming that Woods adequately objected to the admission of such testimony, the State has shown that any error was harmless beyond a reasonable doubt. Absent the disputed testimony, jurors heard evidence that Woods was driving, alone in his own vehicle, with 46 pounds of marijuana compressed into two bundles alongside numerous items used to repackage and conceal drugs, and that he confessed to having "an idea" the marijuana was in the SUV. This is not a case like *Lee*, in which the prosecution relied on evidence of commonplace behaviors among travelers to prove the defendant knowingly transported drugs for sale. *See Lee*, 191 Ariz. at 545, ¶ 14. Nor is this a case like *Escalante*, in which the evidence linking the defendant to the drugs at issue—which were "found in the middle of the road hours after" the defendant was arrested— "was circumstantial and not overwhelming." *Escalante*, 245 Ariz. at 143, ¶ 26.

III.    *Motion for Mistrial*

**¶30**        The police report submitted by the troopers in this case included a section for requesting scientific examination of evidence. One trooper requested a core sample from each bundle found in Woods' vehicle be tested for THC but did not check the box requesting any fingerprint analysis. In Woods' opening statement, he commented on law

enforcement's failure to fingerprint the bundles of marijuana as evidence the troopers predetermined Woods was responsible for the drugs without investigating Woods' statements indicating someone else might have stowed the marijuana in his vehicle.

**¶31** When the State called the trooper as its first witness, he testified that he had, in fact, had the bundles of marijuana tested for fingerprints. No usable prints were found, however, meaning no comparison could be made to Woods or anyone else. On cross-examination, the trooper testified that he requested the fingerprint analysis after submitting the police report and that he did not file a supplemental report upon making the fingerprint request.

**¶32** The State admitted it had not disclosed the fingerprint evidence, and Woods moved for a mistrial. *See* Ariz. R. Crim. P. 15.7 (permitting the superior court to sanction a party for a Rule 15 disclosure violation); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). Woods argued the State's error, in light of his opening statement commenting on the absence of fingerprint evidence followed by the trooper's testimony to the contrary, prejudiced him by implying to jurors that he was "trying to pull the wool over [their] eyes."

**¶33** Although the superior court agreed the State "technically" committed a "disclosure violation," it concluded that a mistrial was unwarranted because the fingerprint results did not incriminate or exculpate Woods and because defense counsel's cross-examination of the trooper on the fingerprint issue "drew . . . the sting out of" the nondisclosure. The court also agreed to provide the following curative instruction, which both parties accepted without objection, during closing instructions: "You heard in opening statements reference to the fact that no fingerprint analysis was performed in this case. Testimony at trial established that fingerprint analysis was performed, but the report was not made available before trial. You should not hold the fact that the report of fingerprint analysis results was not available before trial against either the State or the defendant."

**¶34** We review Woods' challenge to the superior court's denial of his mistrial motion for an abuse of discretion. *See State v. Arvallo*, 232 Ariz. 200, 201, ¶ 6 (App. 2013); *see also State v. Moody*, 208 Ariz. 424, 454, ¶ 114 (2004) ("Whether to impose a sanction for late disclosure and which

sanction to impose are discretionary decisions left to the trial court; we will not disturb those decisions absent an abuse of discretion."). Trial courts have broad discretion to decide whether a mistrial is appropriate because they are "in the best position to determine whether the evidence will actually affect the outcome of the trial." *Arvallo*, 232 Ariz. at 201, ¶ 6 (quoting *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000)). Declaring a mistrial is a "most dramatic remedy" that "should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *Id.* (quoting *State v. Murray*, 184 Ariz. 9, 35 (1995)); *see also* Ariz. R. Crim. P. 15.7(c)(3) (allowing the court to declare a mistrial for a party's discovery violation "if necessary in the interests of justice").

**¶35** The superior court's refusal to grant a mistrial in this case was within its discretion. Because the fingerprint results were not "material to [Woods'] guilt or punishment," *Arvallo*, 232 Ariz. at 206, ¶ 36 (citing *Brady*, 373 U.S. at 87), and because the impact of defense counsel's misstatement during opening statements was moderated by his cross-examination of the trooper and by the court's curative instruction, the State's error did not impair Woods' ability to receive a fair trial.

*IV.    Rule 20 Motion*

**¶36** After the State presented its case, Woods moved for a judgment of acquittal, contending the evidence was insufficient to prove the "for sale" element of A.R.S. § 13-3405(A)(4), which makes it a crime to knowingly transport marijuana for sale.[2] The superior court denied the motion, a decision that Woods now challenges.

**¶37** The superior court must enter a judgment of acquittal after the State presents its evidence "if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). We review the denial of a Rule 20 motion for a judgment of acquittal de novo, and will uphold such decision if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Clow*, 242 Ariz. 68, 70, ¶ 9 (App. 2017) (quoting *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011)). "The substantial evidence required to support a conviction may be direct or circumstantial." *State v. Teagle*, 217 Ariz. 17, 27, ¶ 40 (App. 2007).

---

[2]    Sale is defined as "an exchange for anything of value or advantage, present or prospective." A.R.S. § 13-3401(32).

**¶38** Woods' challenge is to no avail. The State presented evidence that 46 pounds of marijuana were found in a vehicle driven by and registered to Woods; he confessed to having "an idea" the drugs were in the vehicle; the marijuana had a value of at least $23,000; it was compressed and packaged in a manner commonly used for transportation of marijuana in bulk; and Woods' vehicle contained other items commonly used to repackage drugs for further distribution. Jurors could infer from such evidence that Woods knowingly transported the marijuana for sale.

*V.    Prosecutorial Error*

**¶39** Woods also argues that prosecutorial errors, considered cumulatively, deprived him of a fair trial. A claim of prosecutorial error requires the defendant to show error occurred and there is a "reasonable likelihood" the error "could have affected the jury's verdict, thereby denying defendant a fair trial." *State v. Smith*, 250 Ariz. 69, 99, ¶ 138 (2020) (internal citations and quotation marks omitted). Because Woods did not object to the alleged errors, his cumulative-error claim is subject to fundamental-error review. *See id.* To establish a cumulative claim of prosecutorial error under a fundamental-error standard, the defendant must show "the error was so egregious that he could not possibly have received a fair trial." *State v. Vargas*, 249 Ariz. 186, 189–90, ¶¶ 12–13 (2020).

**¶40** Woods' claim of prosecutorial error is based on two alleged transgressions. First, he asserts the prosecutor mischaracterized his criminal history while cross-examining him during the suppression hearing. The prosecutor asked Woods about having two class 2 felony convictions for possession of marijuana for sale and questioned him aggressively when Woods disagreed with the prosecutor's characterization of his record. In fact, the two prior convictions to which the prosecutor was referring were for a class 4 felony attempt to possess marijuana and a class 5 felony attempt to possess marijuana for sale. Woods argues on appeal that the prosecutor's misstatements rendered the suppression proceeding unfair because they falsely disparaged his credibility before the judge.

**¶41** Second, Woods complains that the prosecutor repeatedly argued during the State's opening and closing at trial that Woods "wanted to make money." Woods asserts the comments were improper because there was no admissible evidence that he wanted, or expected, to make money by transporting the marijuana found in his vehicle.

**¶42** The alleged prosecutorial errors, whether considered individually or cumulatively, did not jeopardize Woods' ability to receive

a fair trial. Even if the prosecutor made erroneous statements about Woods' criminal history during the suppression hearing, there is no indication the superior court was "improperly influenced by the statements." *State v. Acuna Valenzuela*, 245 Ariz. 197, 217, ¶ 73 (2018). The prosecutor's comments about Woods "want[ing] to make money" during the State's opening were improper because "[o]pening statement is counsel's opportunity to tell the jury what evidence they intend to introduce" and "not a time to argue the inferences and conclusions that may be drawn from evidence not yet admitted." *State v. Bible,* 175 Ariz. 549, 602 (1993). The comments did not deny Woods a fair trial, however, considering the superior court admonished jurors at the beginning of trial and before their deliberations that counsel's comments during opening statements were not to be taken as evidence. *See Acuna Valenzuela*, 245 Ariz. at 216, ¶ 69; *see also State v. Manuel*, 229 Ariz. 1, 6, ¶ 24 (2011) ("Such cautionary instructions by the court generally cure any possible prejudice from argumentative comments during opening statements."). Similar comments made by the prosecutor during the State's closing argument were permissible because "during closing arguments counsel may summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions." *Bible*, 175 Ariz. at 602. That Woods was motivated by profit to commit the charged offense was a reasonable inference from admissible evidence elsewhere described in this decision.

¶43        Ultimately, although Woods established prosecutorial errors at the suppression hearing and during the State's opening, he fails to establish that the cumulative effect of those errors "so permeated and infected his trial as to render it unfair." *Acuna Valenzuela*, 245 Ariz. at 224, ¶ 120 (quoting *State v. Hulsey*, 243 Ariz. 367, 435, ¶ 123 (2018)).

*VI.    Pecuniary Gain Aggravator*

¶44        Finally, Woods contends the superior court improperly considered the jury's finding that he committed the crime "for pecuniary gain" because that aggravating factor is an inherent element of transportation of marijuana for sale. Whether an aggravating factor is an element of the offense of conviction and whether the superior court properly considered that factor in sentencing the defendant are questions of law subject to de novo review. *State v. Tschilar*, 200 Ariz. 427, 435, ¶ 32 (App. 2001).

¶45        Contrary to Woods' position, no authority prevents the superior court from considering a pecuniary-gain finding under A.R.S.

§ 13-701(D)(6) when sentencing a defendant for transportation of marijuana for sale—even if one assumes that transportation of marijuana for sale inherently includes the expectation of pecuniary gain. *See State v. Lee*, 189 Ariz. 608, 620 (1997) ("The legislature may establish a sentencing scheme in which an element of a crime could also be used for enhancement and aggravation purposes."). Although our legislature has expressly prohibited courts from considering the aggravating circumstances of "[i]nfliction or threatened infliction of serious physical injury" or "[u]se, threatened use or possession of a deadly weapon or dangerous instrument during the commission of the crime" when one of those circumstances "is an essential element of the offense of conviction," A.R.S. § 13-701(D)(1), (2), the legislature has not extended that same limitation to the pecuniary-gain aggravator set forth in A.R.S. § 13-701(D)(6). Thus, the superior court permissibly considered that jury finding in Woods' case.

**CONCLUSION**

¶46        We affirm Woods' conviction and sentence.

