NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DUANE EDWARD BEARDEN, *Appellant*.

No. 1 CA-CR 21-0464
FILED 11-22-2022

Appeal from the Superior Court in Maricopa County
No. CR2017-112750-001
The Honorable Eartha K. Washington, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Cory Engle
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

¶1        Duane Edward Bearden appeals from his conviction and sentence for producing marijuana. He argues that the superior court abused its discretion by denying his motion to suppress evidence obtained during a warrantless search. Because the emergency aid exception to the warrant requirement applied, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Around 2:30 a.m., police received a 9-1-1 call from an unknown caller. The caller sounded distressed and said, "Help, help, help," before the call suddenly ended. The dispatcher traced the call to a specific address in Peoria and sent two police deputies for a welfare check.

¶3        When the deputies arrived, they found a large property enclosed by a seven-foot-tall block fence with a padlocked, corrugated steel gate. The deputies did not see or hear anyone needing help, so they peered over the wall but saw no one. Considering the 9-1-1 call, the officers concluded that there still may be an ongoing emergency and decided to climb the wall to continue their search for the distressed caller.

¶4        The deputies walked outside a residential building and the attached garage, looking through windows and open doors for anyone who needed aid. As they neared one window, a deputy smelled unburnt marijuana. Through another window, the deputy saw a closed interior door with a bright light emanating from beneath it. The odor of fresh marijuana had also grown stronger.

¶5        At this point, the deputies believed marijuana was growing on the property. And with the 9-1-1 call in mind, they felt this was a potentially dangerous situation. They returned to their car and retrieved rifles before heading toward a large, open, detached garage. Inside the garage, they smelled a strong odor of marijuana and noticed a marijuana

grow tent. Deeper into the garage, they saw a man lying on a cot and a rifle[1] hanging on a nail nearby. The man appeared asleep, uninjured, and not in distress. The deputies believed the man might be guarding the marijuana and opted not to wake him.

¶6        They left the property and remained outside the wall until they obtained a search warrant. Before the search, a SWAT team secured the property and found Bearden. When police searched the home, they found growing marijuana plants and drug paraphernalia.

¶7        The State charged Bearden with five drug-related counts and three counts of misconduct involving weapons. Before the trial, Bearden moved to suppress the evidence found during the search, arguing that no exigent circumstances existed to justify a warrantless search. The court conducted an evidentiary hearing, at which Bearden argued that the deputies "didn't have enough cause . . . to enter and to go over the wall." The superior court disagreed and allowed the evidence, ruling that exigent circumstances existed because the deputies believed someone at that address had called for help and then gone silent.

¶8        The case proceeded to trial, and the jury found Bearden guilty of producing marijuana, a Class 4 felony under A.R.S. § 13-3405.[2] The jury could not reach a verdict on the remaining counts. Instead of retrial, Bearden pled guilty to attempted possession of heroin for sale, a Class 3 felony, and one count of misconduct involving weapons, a Class 4 felony. The remaining counts were dismissed. The court sentenced Bearden to concurrent prison terms of five years for attempted possession of heroin for sale, five-and-a-half years for producing marijuana, and three years for weapons misconduct.

¶9        Bearden appealed his conviction and sentence for producing marijuana, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

---

[1]        The rifle was later found to be a paintball or pellet gun.

[2]        In the time since Bearden's conviction, Arizona legalized the production of marijuana in some cases. *See* A.R.S. §§ 13-3405(A), 36-2852(A).

## DISCUSSION

¶10            "We review the denial of a motion to suppress for an abuse of discretion" and consider only the evidence presented at the suppression hearing, viewing it in the light most favorable to sustaining the court's ruling. *State v. Manuel*, 229 Ariz. 1, 4, ¶ 11 (2011). In doing so, we review *de novo* the court's ultimate legal conclusion that the search complied with the Fourth Amendment. *State v. Jean*, 243 Ariz. 331, 334, ¶ 9 (2018).

¶11            Bearden contends the court erred by denying his motion to suppress, arguing that the emergency aid exception to the warrant requirement does not apply. The Fourth Amendment to the United States Constitution and Article 2, Section 8 of the Arizona Constitution protect against unreasonable searches and seizures. Warrantless searches and seizures inside a home are presumptively unreasonable. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). But under exigent circumstances, a warrantless search may be justified. *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978). The emergency aid exception allows for a warrantless search if "(1) police have reasonable grounds to believe that there is an emergency that requires their immediate assistance to protect life or property and (2) there is a reasonable basis to associate the emergency with the place to be searched." *State v. Inzunza*, 234 Ariz. 78, 82, ¶ 12 (App. 2014).

¶12            Bearden argues that the first element is not met here because an anonymous 9-1-1 call "with no other evidence" does not provide police with reasonable grounds to believe there is an ongoing emergency. But in a similar case, *State v. Bennett*, 237 Ariz. 356 (App. 2015), we held that the emergency aid exception applied.

¶13            In *Bennett*, police received a 9-1-1 "hang up" call traced to a specific address. 237 Ariz. at 357, ¶ 2. When the deputies arrived, they knocked on the front door, but no one responded. *Id.* at 357–58, ¶ 3. The deputies proceeded past an unlocked gate and eventually noticed marijuana plants inside a window and in the yard. *Id.* at 358, ¶ 3. The court denied the defendant's motion to suppress the evidence. We affirmed because there was "more than only a 911 hang-up call" linked to the address to justify a reasonable belief that there was an emergency. *Id.* at 358–59, ¶¶ 6, 11. We noted that the deputies knocked but heard no answer, leaving them "unable to verify that either there had never been an emergency or the emergency had passed." *Id.* at 359, ¶ 11.

¶14            Bearden first argues that *Bennett* should not control because it was wrongly decided. He contends that *Bennett* permits officers to conduct

warrantless searches until they verify that no emergency exists. And he asserts this contradicts the rule that police "must gather evidence" to support their belief that there is an ongoing emergency because "[t]he absence of proof that no one is in danger is not the same as positive proof that someone is at risk of serious harm." To support this assertion, Bearden cites cases in which the emergency aid exception was based on more than just a 9-1-1 call. But he ultimately cites no case that requires officers to "gather evidence."

**¶15**  Police only need "reasonable grounds" to support the belief that an emergency exists. *Inzunza*, 234 Ariz. at 82, ¶ 12. The original 9-1-1 call from the address with someone crying for help gave the deputies reasonable grounds to believe there was an ongoing emergency at the location. *See Bennett*, 237 Ariz. at 359, ¶ 11.

**¶16**  Bearden also argues that *Bennett* is distinguishable. He relies only on the fact that the deputies in *Bennett* knocked on the front door before proceeding, unlike the deputies here. But *Bennett* does not require police to knock before investigating a 9-1-1 hang-up call. The knocking "gave the deputies additional objective information that the emergency that had first brought them to the address had not abated." *Bennett*, 237 Ariz. at 359, ¶ 11. Here, the deputies were informed that a 9-1-1 call came from the address and that the caller had said, "Help, help, help." They saw no one out front or over the wall when they arrived. As in *Bennett*, the 9-1-1 call gave the deputies reason to believe there was an emergency at the specific location. And like the deputies in *Bennett* who knocked but heard no answer, the deputies here looked for someone needing help but were still "unable to verify that either there had never been an emergency or the emergency had passed." *See id.* The deputies were justified in entering the property without a warrant because they reasonably believed that someone inside needed emergency aid.

## CONCLUSION

**¶17**  We affirm.

